IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **SUMMER DANIELLE LYONS,** *on behalf of E.R.L, a minor child,* | ) ) ) |
| Plaintiff, | ) ) NO. 3:25-cv-00975 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE HOLMES |
| **JOSHUA W LYONS,** *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Summer Danielle Lyons, a resident of Alabama, has filed a pro se Complaint (Doc. No. 1) on behalf of herself and E.R.L., pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. This case was originally filed on June 20, 2025 in the United States District Court for the Northern District of Alabama (Doc. No. 1) and was transferred to this Court by Order entered on August 28, 2025 by the Honorable Judge Annemarie Carney Axon. (Doc. No. 35).

Pending before the Court is Plaintiff's IFP Motions (Doc. No. 40 at PageID# 83-87 & Doc. No. 89 at PageID# 73-77)[1], Supplemental Emergency Motion for Protective Relief and Clarification ("Emergency Motion") (Doc. No. 24); Plaintiff's Emergency TRO Motion ("TRO Motion 1") (Doc. No. 40 at PageID# 36-42); Plaintiff's Emergency Motion for Temporary Restraining Order ("TRO

---

[1] Plaintiff is in the habit of submitting self-titled "packets" within which various documents, including individual motions, are contained. Given the significant number of documents filed by Plaintiff in this manner, the Clerk has docketed each "packet" as one docket entry. When a motion is (or motions are) contained within a packet, the Court cites herein to the specific page numbers of the "packet" that contain the motion(s). Thus, the Court's citations to the docket herein may appear inconsistent at times based on Plaintiff's filings.

Motion 2") (Doc. No. 89 at PageID# 1124-30); and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion 3") (Doc. No. 97)[2].

Also pending before the Court are numerous other motions, including State Defendants' Motion to Dismiss (Doc. No. 20) and Defendant Lyons' Motion to Dismiss (Doc. No. 80), as well as Plaintiff's Motion to Amend Caption ("Motion to Amend 1") (Doc. No. 33), Motion to Amend Caption and Consolidation of Claims Under Plaintiff ("Motion to Amend 2") (Doc. No. 40 at PageID# 80–81), Motion to Appoint Counsel (Doc. No. 41), Motion to Strike State Defendants' Oppositions to TRO and Appointment of Counsel (Doc. No. 47), Motion to Compel Limited Expedited Discovery (Doc. No. 50), Motion for In-Camera Review of Communications and Evaluation Materials (Doc. No. 52), Motion for Preservation Order (Doc. No. 53), Motion for Entry of Protective Order (Doc. No. 63), Motion to Restyle Plaintiff's Notice Filed September 19-22, 2025 as Supporting Memoranda of Law (Doc. No. 66), Motion to Amend Complaint for Clarification and Addition of Defendant Identification (Doc. No. 76), Motion for Leave to File First Amended Verified Complaint (Doc. No. 88), Motion to Amend Caption and Consolidation of Claims Under Plaintiff ("Motion to Amend 3") (Doc. No. 89 at PageID# 1168-69), two Motions to Disqualify Guardian Ad Litem John Evans Nunc Pro Tunc (Doc. Nos. 95 & 96), and Motion to Strike Defendants' Motion to Strike Plaintiff's Motion to Strike Defendants' Motion to Dismiss (Doc. No. 99).[3]

Because Plaintiff has already been granted pauper status (Doc. No. 4), Plaintiff's IFP Motions (Doc. No. 40 at PageID# 83-87 & Doc. No. 89 at PageID# 73-77) will be denied as moot. Plaintiff's Emergency Motion (Doc. No. 24) will be denied without prejudice. Plaintiff's TRO Motion 1 (Doc.

---

[2] Plaintiff's Emergency TRO "Packet" (Doc. No. 40) contains a variety of documents in one submission, including a Verified Complaint, a TRO Motion, an Affidavit, supplemental briefs on various arguments, a second Motion to Amend Caption, a Certificate of Service, and an IFP Motion, among others.

[3] One other filing by Plaintiff, Doc. No. 25, appears to be a request for a protective order filed by Plaintiff when the case was with the United States District Court for the Northern District of Alabama. Plaintiff has also filed two Motions to Disqualify Guardian Ad Litem John Evans Nunc Pro Tunc (Doc. Nos. 95 & 96). Because these filings lack a proper signature, *see* Fed. R. Civ. P. 11(a), the Court need not address them.

No. 40 at PageID# 36-42), TRO Motion 2 (Doc. No. 89 at PageID# 1124-30), and TRO Motion 3 (Doc. No. 97) will be denied pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and this case will be stayed. For this reason, the remainder of the pending motions (Doc. Nos. 20; 33; 40 at PageID# 80-81; 41; 47; 50; 52; 53, 63; 66; 76; 80; 88; 89 at PageID# 1168-69; 95; 96; and 99) will be denied subject to refiling at the resolution of the related ongoing state-court proceedings.

## I. IFP MOTIONS

Plaintiff includes an IFP Motion within both of her Emergency TRO Packets (Doc. No. 40 at PageID# 83–87 & Doc. No. 89 at PageID# 73-77). Plaintiff submitted a Motion for Leave for Proceed In Forma Pauperis (Doc. No. 2) on June 20, 2025 in the United States District Court for the Northern District of Alabama, and that Motion was granted. (Doc. No. 4). Therefore, Plaintiff's IFP Motions (Doc. No. 40 at PageID# 83-87 & Doc. No. 89 at PageID# 73-77) will be denied as moot.

## II. EMERGENCY MOTION (DOC. NO. 24)

On August 12, 2025, before this case was transferred to this Court, Plaintiff filed her Emergency Motion (Doc. No. 24). Plaintiff based her Emergency Motion on an attachment order that was issued allegedly from "unlawful misuse of a Tennessee divorce injunction based on a false 'no other custodian' assertion." (*Id.* at PageID# 738). Plaintiff requests:

> 1. [a]n order temporarily enjoining any enforcement of the July 2025 Tennessee attachment order pending this Court's ruling on federal jurisdiction and ADA violations; 2. [a] bar on law enforcement from executing said order in Alabama, where [her child] has resided for over two years; 3. Recognition of Plaintiff's emergency declaration of parental authority and notarized power of attorney for the child . . . .

(Doc. No. 24 at PageID# 738).

In this district, a movant seeking a temporary restraining order must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588,

3

600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

Plaintiff's Emergency Motion does not comply with these rules. Plaintiff has failed to file a memorandum of law as required by L.R. 65.01(b), and Plaintiff has failed to certify in writing "efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* L.R. 65.01(c).

Furthermore, both Plaintiff's Emergency Motion (Doc. No. 24) and Plaintiff's Affidavit (Doc. No. 24-1) contain electronic signatures. "Every pleading…must be signed by…a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). "The United States Supreme Court interpreted Rule 11(a)'s signature requirement to 'call for a name handwritten…'" *Purvey v. Knoxville Police Dep't*, 3:20-CV-317, 2021 WL 1840443, at *1 (E.D. Tenn. May 7, 2021) (quoting *Becker v. Montgomery*, 532 U.S. 757, 764 (2001)). Filings containing only electronic signatures as opposed to handwritten signatures do not satisfy Rule 11(a). *See Simpkins v. John Maher Builders, Inc.*, 3:23-CV-0367, 2024 WL 36424, at *1 (M.D. Tenn. Jan. 3, 2024). Because the Emergency Motion (Doc. No. 24) and the Affidavit (Doc. No. 24-1) lack Plaintiff's signature, the Court cannot consider the Emergency Motion as is.

Therefore, Plaintiff's Emergency Motion (Doc. No. 24) will be denied without prejudice.

### III. TRO MOTION 1 (DOC. NO. 40 AT PAGEID# 36-42), TRO MOTION 2 (DOC. NO. 89 at PAGEID# 1124-30) AND TRO MOTION 3 (DOC. NO. 97)

In addition to Plaintiff's Emergency Motion, Plaintiff has filed other requests for a TRO. In TRO Motion 1, (Doc. No. 40 at PageID# 36-42), Plaintiff requests that this Court enjoin the enforcement of the gag order issued by the state court in May of 2025; "[b]ar execution or reliance on any fabricated civil attachment"; compel the state court to give Plaintiff ADA accommodations; order production of the Rule 35 report and preservation of subpoenaed testimony; prevent the relocation enforcement or "custody orders inconsistent with § 36-6-406(a)(2)"; set an expedited briefing and hearing on a preliminary injunction; and grant such other relief as justice requires. (*Id*. at PageID# 41-42).

The Court has considered Plaintiff's TRO Motion 1 (Doc. No. 40 at PageID# 36-42) and its accompanying briefs (*Id*. at PageID# 46-79), Verified Complaint (*Id*. at PageID# 15-35), and Affidavit (*Id*. at PageID# 43-45). The Court has considered State Defendants' "Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order (Doc. No. 13), Supplemental Emergency Motion for Protective Relief and Clarification (Doc. No. 24), and Request for Immediate Federal Protective Oversight (Doc. No. 25)" (Doc. No. 28) and Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order (Doc. No. 45). The Court has also considered Defendant Lyons' Motion to Dismiss and its Memorandum in Support (Doc. Nos. 80 and 80-1), and other filings. For the reasons stated below, the TRO Motion 1 will be denied pursuant to *Younger* abstention.

Plaintiff also filed a TRO Motion 2 (Doc. No. 89 at PageID# 1124-30) and a TRO Motion 3 (Doc. No. 97). Plaintiff's TRO Motion 2 is a duplicate of TRO Motion 1 (Doc. No. 40 at PageID# 36-42), and the allegations and requests for relief in Plaintiff's TRO Motion 3 (Doc. No. 97) are similar, if not the same, as in TRO Motions 1 and 2. For these reasons, Plaintiff's TRO Motions 2 and 3 will also be denied pursuant to *Younger* abstention.

**A. Alleged Facts**

On July 9, 2021, Plaintiff filed for an order of protection after a domestic violence incident where Defendant Lyons allegedly assaulted Plaintiff and endangered their child. (Doc. No. 40 at PageID# 17). Detectives investigated the alleged assault, during which Defendant Lyons admitted to committing sexual abuse of a child. (*Id.*). Those detectives, according to Plaintiff, were "released [from the state court case] without testifying" despite having been subpoenaed. (*Id.* at PageID# 18). Treatment providers such as the child's therapist were also subpoenaed to testify but were prevented from doing so, according to Plaintiff. (*Id.*).

On August 5, 2021, Plaintiff "collapsed at work and required emergency surgery for a burst duodenal ulcer after delaying care to ensure the child attended a forensic interview the prior day." (*Id.*). Plaintiff underwent multiple hospitalizations, was incapacitated for a period of time, and was evicted. (*Id.* at PageID# 17).

In 2023, Plaintiff and her child moved to Alabama for their safety and for "continuity of care." (*Id.* at PageID# 18). Plaintiff claims she was her child's only legal custodial parent at the time of their relocation. (*Id.*). Between 2023 and 2025, "Tennessee proceedings continued despite unresolved jurisdictional challenges under the UCCJEA and PKPA." (*Id.*).

Plaintiff argues she "filed motions [throughout the state-court proceedings] to deny Tennessee jurisdiction and to vacate unlawful orders . . . ," but those went unresolved by the state court. (*Id.* at PageID# 18). Plaintiff further alleges she requested that she be allowed to appear and give testimony remotely during her state-court proceedings. (*Id.*). Plaintiff supported this request with therapist documentation, and she filed a motion requesting said remote participation on March 8, 2024 based on this disability. (*Id.*). Plaintiff renewed this request in May of 2025 along with supporting documentation. (*Id.*). Opposing counsel argued Plaintiff needed to appear in person. (*Id.*). Plaintiff claims she was "forced to attempt appearances in hostile, inaccessible conditions despite [a]

6

documented disability." (*Id*. at PageID# 19). Plaintiff alleges the state court would delay its decisions on Plaintiff's accommodation requests until days before the hearings commenced, "rendering any relief meaningless." (*Id*.).

Plaintiff alleges she sought discovery, such as a Rule 35 evaluation report[4], but claims she never received a copy of the evaluation despite filing multiple motions to compel that were never ruled upon. (*Id*. at PageID# 19). Plaintiff challenges the validity and procedural integrity of the Rule 35 evaluation, as well as the evaluating physician's actions in performing the evaluation. (*Id*.).

Plaintiff filed other objections and motions such as motions to strike and motions to vacate unauthorized orders, which Plaintiff argues were all ignored. (*Id*. at PageID# 20, 22). Plaintiff also continued filing requests for disability accommodations. (*Id*. at PageID# 20). However, Plaintiff believes the decision by the state court as to her requests was "insufficient to allow [Plaintiff] meaningful participation." (*Id*.). Plaintiff argues additional court hearings were scheduled without accommodations provided to Plaintiff. (*Id*.).

Plaintiff submitted disability accommodation requests on July 17, 2025, and claims the state court gave a delayed response. (*Id*. at PageID# 24). Plaintiff also attempted to have the guardian ad litem on the case disqualified for "egregious conflicts of interest and jurisdictional overreach undermining neutrality under Rule 40A," but the state court denied her requests. (*Id*. at PageID# 25).

On July 25, 2025, Plaintiff claims Defendant Lyons was confirmed by DCS as having committed child sexual abuse. (*Id*. at PageID# 21, 25). Plaintiff argues that the state court disregarded the substantiation and relied instead on the Rule 35 evaluation. (*Id*. at PageID# 22). The state court allowed "Defendant Lyons to continue custody claims, in conflict with Tenn. Code Ann. § 36-6-406(a)(2)." (*Id*. at PageID# 25). Plaintiff states that the state court required her to relocate with her

---

[4] A "Rule 35" evaluation is a court-ordered physical or mental examination of a party, and it is ordered by the court in which the action is pending when "the mental or physical condition . . . of [that] party, or of a person in the custody or under the legal control of a party, is in controversy." Tenn. R. Civ. P. 35.01.

child despite how "it would place her and her child near the substantiated abuser and disrupt medical care." (*Id*. at PageID# 23). Plaintiff further argues Tennessee's relocation statue was "misapplied" against her. (*Id*. at PageID# 21).

Plaintiff claims a "pre-hearing bench meeting" occurred in the state-court case in Plaintiff's absence. (*Id*. at PageID# 21, 25). Plaintiff alleges subpoenaed detectives were released without testimony, that DCS officials "signed orders despite not being parties of record," and that Plaintiff filed objections related to these actions. (*Id*. at PageID# 21).

Plaintiff blames her inability to appear in court on the denial of her disability accommodations and "lack of discovery access" in July and August of 2025. (*Id*. at PageID# 21). In August of 2025, Plaintiff alleges the state court imposed a $261.50 sanction against her after she voluntarily dismissed a petition. (*Id*. at PageID# 26). The state court entered a gag order that same month which forbade Plaintiff from discussing the child sexual abuse substantiation of Defendant Lyons and any related safety concerns. (*Id*.). Plaintiff argues the gag order "was not narrowly tailored and functioned to suppress Plaintiff's speech about official substantiation and to shield state actors." (*Id*.). Plaintiff alleges she filed objections to the gag order which were denied "without meaningful consideration." (*Id*.). Plaintiff claims the gag order "obstructs [her] ability to warn of ongoing safety risks and chills her advocacy with oversight agencies." (*Id*.).

Plaintiff argues there has been an intentional effect by the "exclusion from hearings, suppression of witnesses, denial of accommodations, withholding of discovery, sanctions, and gagging," which has "deprive[d] Plaintiff of meaningful participation and a fair forum," and, furthermore, Plaintiff states her judicial and ethics complaints, as well as her allegations of ADA violations, "remain pending with oversight bodies" and "the U.S. Department of Justice." (*Id*. at PageID# 26-27.

**B. Legal Standard**

Federal Rule of Civil Procedure 65 provides the Court's ability to grant injunctive relief, such as temporary restraining orders. Fed. R. Civ. P. 65(b). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

Those seeking the issuance of a temporary restraining order must meet four requirements. They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). "When one factor is dispositive, a district court need not consider the others." *D.T. v. Sumner County Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019).

**C. Discussion**

Defendants argue that the Court should abstain pursuant to *Younger* (Doc. No. 20 at PageID# 721; Doc. No 80-1 at PageID# 832), and this Court agrees for the reasons set forth below. Plaintiff cannot meet the first requirement to receive the injunctive relief and damages she requests. Even if Plaintiff could meet the first requirement, Plaintiff cannot establish that she would suffer irreparable injury because Plaintiff's state-court proceedings are ongoing. *See* discussion *infra* pp. 10-11. This determination is therefore dispositive, and the Court will not opine on the remaining factors. *See Netchoice v. Skrmetti*, No. 3:24-CV-01191, 2025 WL 1710228, at *14 (M.D. Tenn. June 18, 2025).

    1. Legal Standard: *Younger* Abstention

The Supreme Court in *Younger* "held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (citing *Younger*, 401 U.S. at 43-44). *Younger* applies

in civil proceedings as well. *Moore v. Sims*, 442 U.S. 415, 423 (1979) (*Younger* principles apply with equal force to pending state court civil proceedings that involve state interests). The foundation of the Supreme Court's holding in *Younger* was Congress' desire for a lack of interference into the state courts by the federal courts. *Younger*, 401 U.S. at 43; *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) ("*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity.").

A federal court must abstain pursuant to *Younger* upon fulfillment of three requirements: "(1) there must be [related] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (quoting *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)).

2. <u>Related Ongoing State Judicial Proceedings</u>

In State Defendants' Memorandum of Law in Support of State Defendants' Motion to Dismiss ("Memorandum of Law") (Doc. No. 21), as well as in their Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order (D.E. 40) (Doc. No. 45), State Defendants assert that Plaintiff's related divorce and child custody proceedings in the Sumner County Circuit Court were initiated in July of 2021 and have not yet concluded. (*Id.* at PageID# 729; Doc. 27-1; Doc. No. 45 at PageID# 164).[5] Defendant Lyons agrees that there is related ongoing state-court litigation between himself and Plaintiff. (Doc. No. 80-1 at PageID# 832).

Plaintiff acknowledges that her judicial, ethics, and ADA complaints "remain pending with oversight bodies," inferring a pending nature of her claims. (Doc. No. 40 at PageID# 27). In her

---

[5] The Court takes judicial notice of Plaintiff's divorce case filed on July 19, 2021, in the Circuit Court for Sumner County Tennessee at Gallatin, case no. 83CC1-2021-CV-646. (Doc. No. 27-1). Based on the Court's own research through the Sumner County Online Court Records System, the current status of the related state court case is "Open." https://sumner.tncrtinfo.com/cvCaseForm.aspx?id=9B27A84F-F4BF-4345-82A3-5F146061012D&dsid=34d8dd1f (last visited on September 30, 2025).

Complaint filed on June 20, 2025, Plaintiff states, "As of the date of this filing, the Sumner County Circuit Court has not issued a final custody determination under the UCCJEA." (Doc. No. 1 at PageID# 9). Plaintiff also states that she has filed for emergency custody protection in Walker County, Alabama. (*Id*. at PageID# 11).

"[S]everal courts have found that state-court proceedings are considered ongoing for the purposes of *Younger* abstention until a litigant has 'exhausted all of his state appellate remedies.'" *Carter v. Tenn. Dep't of Children's Servs., et al.*, No. 3:22-cv-00247, 2023 WL 2027804, at *3 (M.D. Tenn. Feb. 15, 2023) (citing *Moncier v. Jones*, 803 F. Supp. 2d 815, 833 (E.D. Tenn. 2011)). The Court finds that, for the purposes of *Younger* abstention, Plaintiff's related state-court proceedings are ongoing.

### 3. Implication of an Important State Interest

After determining whether state-court proceedings are pending, the Court must next determine whether the related state-court proceedings implicate an important state interest. State Defendants, citing *Moore*, 442 U.S. at 435, argue that ". . . there is no doubt that matters involving domestic relations and child custody implicate important state interests." (Doc. No. 21 at PageID# 729-30).

This Court agrees. "Several cases . . . have found that civil proceedings involving family law and adjudicating parental rights likewise implicate important state interests for the purposes of *Younger* abstention." *Carter*, 2023 WL 2027804, at *4 (citing *McDaniels v. New Jersey Div. of Youth and Family Serv.*, 144 F. App'x 213, 215 (3d Cir. 2005); *P. Edward A. By and Through Nolan v. Williams*, 696 F. Supp. 1432, 1436-37 (D. Utah 1988)). For this reason, the Court can easily conclude that the pending state-court proceedings, ones that undoubtedly regard domestic relations issues, implicate interests important to the state of Tennessee as it pertains to *Younger*.

### 4. Whether Plaintiff Has Adequate Opportunity to Raise Constitutional Claims in the Related Ongoing State-Court Proceedings

Lastly, the Court must determine whether Plaintiff has an adequate opportunity to raise her constitutional claims in the state-court proceedings. As to this requirement, the burden is on Plaintiff to show that state law prohibits Plaintiff's ability to present her claims. *Squire v, Coughlan*, 469 F.3d 551, 557 (6th Cir. 2006).

State Defendants contend that Plaintiff has state remedies available in Tennessee. (Doc. No. 21 at PageID# 730). Plaintiff argues that alleged "repeated denials of ADA accommodations and suppression of subpoenaed testimony demonstrate that Tennessee cannot provide a fair forum." (Doc. No. 40 at PageID# 69-80). As mentioned above, however, Plaintiff indicates that her judicial and ethics complaints, as well as her allegations of ADA violations, "remain pending with oversight bodies," suggesting her ability to raise her claims at the state court level. (*Id*. at PageID# 27).

If the party arguing against *Younger* abstention has not attempted to present her claims in related state-court proceedings, the federal court should assume that the plaintiff would be able to bring those claims in the state court and therefore be afforded an adequate remedy. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Because Plaintiff's state-court proceedings are pending, Plaintiff continues to have the opportunity to bring her claims through higher state-court channels, such as the Tennessee Court of Appeals or the Tennessee Supreme Court, prior to bringing her claims in federal court. Therefore, Plaintiff has an adequate opportunity to have her claims heard in the related ongoing state-court proceedings.

5. <u>Exceptions to *Younger* Abstention</u>

Plaintiff argues that an exception to *Younger* abstention applies because the actions of State Defendants "demonstrate bad faith and harassment" due to the alleged denial of ADA accommodations, the suppression of subpoenaed testimony, and retaliatory referrals. (Doc. No. 40 at PageID# 70-71).

12

There are three recognized exceptions to *Younger* abstention: (1) where "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) where "[a] challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore*, 442 U.S. at 424 (quoting *Huffman*, 420 U.S. at 611); and (3) where there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). The exceptions have historically been interpreted narrowly by both the Supreme Court and the Sixth Circuit, and the burden is on the plaintiff to demonstrate the existence of at least one of the exceptions to the *Younger* abstention doctrine, if applicable. *Id*. (citing *Gorenc v. City of Westland*, 72 F. App'x 336, 338-39 (6th Cir. 2003); *Squire*, 469 F.3d at 552).

A plaintiff cannot merely allege fraud or bad faith to establish an exception to *Younger* abstention, but, rather, a plaintiff must make a showing of such. *See Squire*, 469 F.3d at 557 (explaining that the plaintiff had made no showing that *Younger* exception of bad faith applied, and the district court, therefore, appropriately denied the plaintiff's request for injunctive relief). Plaintiff has not made a showing of such here. Despite her many filings, Plaintiff has failed to show the Court that there has in fact been bad faith or harassment on the part of State Defendants. Plaintiff's arguments as to bad faith by State Defendants are simply just that – arguments. Arguments, without more, are not enough. *See McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

According to the Sixth Circuit, the Supreme Court has applied the harassment/bad faith exception to *Younger* abstention "to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. 2018) (quoting *Ken-N.K., Inc. v. Vernon Township*, 18 F. App'x 319, 324-25 n.2 (6th Cir. 2001)). The same cannot be said here as this case concerns a state court proceeding regarding divorce and child custody. Therefore, this exception does not apply to the instant case.

13

Plaintiff seems to argue that there exists "an extraordinarily pressing need for immediate federal equitable relief," *Kugler*, 421 U.S. at 125, by asserting that "[t]he Tennessee proceedings have produced constitutional violations so severe that abstention is unwarranted and federal jurisdiction . . . is both proper and necessary." (Doc. No. 40 at PageID# 60). But to succeed on the third exception to *Younger* abstention, the litigant must show the "circumstances [are] 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief . . . ." *Kugler*, 421 U.S. at 125. Plaintiff has not done so here. If Plaintiff were to succeed with this exception, it would require the Court to interfere with ongoing state court proceedings, ones that Plaintiff can still utilize in order for her concerns to be heard prior to any federal court involvement. Therefore, this exception does not apply.

Plaintiff also fails to show that the second exception to the *Younger* abstention doctrine applies, as she focuses her arguments on the first and third exceptions as detailed above. Because Plaintiff has failed to fulfill her burden of demonstrating the existence of at least one of the exceptions to the *Younger* abstention doctrine, the Court finds that none of the exceptions apply. This determination applies to both Plaintiff's ADA and Rehabilitation Act claims, as well as her Section 1983 claims. *Lloyd*, 2018 WL 6584288, at *5.

Because all three requirements of *Younger* abstention are satisfied and Plaintiff has not demonstrated that an exception applies, she cannot establish the first requirement for a TRO to issue. That is to say, she cannot show that she is likely to succeed on the merits of her claims because the Court must abstain from hearing those claims. Consequently, her TRO Motion 1 (Doc. No. 40 at PageID# 36-42) will be denied. Furthermore, because Plaintiff's TRO Motion 2 is a duplicate of TRO Motion 1 (Doc. No. 40 at PageID# 36-42), and because the allegations and requests for relief in Plaintiff's TRO Motion 3 (Doc. No. 97) are similar, if not the same, as in TRO Motions 1 and 2, Plaintiff's TRO Motions 2 and 3 will also be denied pursuant to *Younger* abstention.

6. <u>Whether to Stay the Case</u>

The Court must next decide whether to stay the federal action while the state action remains pending or, in the alternative, to dismiss Plaintiff's claims without prejudice.

Federal courts generally favor staying the federal proceedings over dismissing them in cases involving Section 1983 claims for damages in which the federal court determines that the doctrine of *Younger* abstention applies. *See Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998) (directing that "in the interests of caution," the case (involving a claim for damages under Section 1983 that was subject to *Younger* abstention) be remanded with instructions to the district court to stay the federal proceedings to protect plaintiff from possible statute-of-limitations issues she may face if her claims instead were dismissed); *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) (staying rather than dismissing plaintiff's claims for damages under Section 1983, which were subject to *Younger* abstention on the grounds that a stay "preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction."). This preference also applies to ADA and Rehabilitation Act claims. *See Lloyd*, 2018 WL 6584288, at *5.

Here, Plaintiff requests damages. (Doc. 40 at PageID# 35; Doc. No. 89 at PageID# 1123). For these reasons, the Court will stay this action rather than dismissing it.

Therefore, this case will be stayed, and the Court declines to resolve the merits of the remaining motions given that it is abstaining from exercising jurisdiction at this time.

## V. CONCLUSION

For the reasons discussed herein, Plaintiff's IFP Motions (Doc. No. 40 at PageID# 83-87 & Doc. No. 89 at PageID# 73-77) are **DENIED** as moot.

Plaintiff's Emergency Motion (Doc. No. 24) is **DENIED** without prejudice.

Plaintiff's TRO Motion 1 (Doc. No. 40 at PageID# 36-42), TRO Motion 2 (Doc. No. 89 at PageID# 1124-30), and TRO Motion 3 (Doc. No. 97) are **DENIED** pursuant to the doctrine of *Younger* abstention.

The remaining pending motions (Doc. Nos. 20; 33; 40 at PageID# 80-81; 41; 47; 50; 52; 53, 63; 66; 76; 80; 88; 89 at PageID# 1168-69; 95; 96; and 99) are **DENIED** without prejudice subject to refiling at the resolution of the related ongoing state-court proceedings.

This action is hereby **STAYED** until resolution of the related ongoing state-court proceedings.

In light of the stay, the Clerk **SHALL** administratively terminate the remaining pending motions (Doc. Nos. 20; 33; 40 at PageID# 80-81; 41; 47; 50; 52; 53, 63; 66; 76; 80; 88; 89 at PageID# 1168-69; 95; 96; and 99), and the parties shall be permitted to refile, if appropriate, at the resolution of the related ongoing state-court proceedings.

The Clerk **SHALL** administratively close this case, and the parties shall notify the Court in writing within 14 days after the resolution of the state-court proceedings, at which point the case may be re-opened if appropriate.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE